Good morning. My name is Dillon Fishman. I'm accompanied by Mary Beth Canty and Joel DeConcini and we're acting under the supervision of Dr. Willie Jordan Curtis. I'd like to at the outset if I may reserve two minutes for rebuttal. Yes, you may. And watch the clock so that you know when you're approaching that time. Thank you, Your Honor. Now, I'll be discussing the issue of harmlessness. My co-counsel, Mr. DeConcini, will discuss the issue of the adoption of the factors test and Ms. Canty will handle rebuttal. The reason why we're here today is not because of the government's negligence, because at the trial court it's already been found that the government was negligent. And in fact, this negligence caused our clients, Ms. Harris's, permanent injuries from which she will suffer for the rest of her life, these debilitating injuries. Now, the government was able to preclude Ms. Harris's only expert on the issue of permanent disability, Ms. Harris wanted to introduce this expert because that was the reason for which she brought her claim. And the real fundamental unfairness in this case is that the government's expert was able to prepare, was able to use What's fundamentally unfair about having rules that require certain procedures to be complied with? There's nothing unfair about having rules, Your Honor. What is unfair is that the government's expert, Dr. Cole, was able to review Dr. Jordan, our expert's reports, was able to then prepare his own report, submit it, and testify, having tailored his testimony with the knowledge of what Dr. Jordan would have testified, and yet was able to also preclude Dr. Jordan from testifying at trial. In other words, the government essentially was able to have its cake and eat it too, Your Honor. Now, admittedly, there was a technical discovery violation here. There was, in fact, a late disclosure. But the question is whether Rule 36... Was Dr. Jordan a treating physician? No, Your Honor. He was an expert physician. And that's why it was so important, because he was Ms. Harris's only expert. She wanted to have his testimony at trial on the ultimate issue, the paramount issue, the reason why she brought her claim, was the permanent disability that she faces. She was not able to have any expert or anyone testify on that issue. Well, what was the reason for that? Was there substantial justification for that? No, Your Honor. Frankly, we don't see any substantial justification. There's no real justification that we know. And in retrospect, there may have been tactical trial decisions that could have been made differently. However, Rule 37C1 is a disjunctive. We believe that we've satisfied harmlessness in this case, because the government really faced no surprise or prejudice here. The government's expert was able to incorporate Dr. Jordan's findings in his own written report, was able to respond to that, and tailor his testimony at trial with full knowledge. And the trial court stated in its order that it relied on Dr. Cole's testimony and his report. And Dr. Cole had in turn relied upon Dr. Jordan's report. Therefore, it stands to reason that the government really had the best of both worlds here. And there really was the inequity. When did Dr. Jordan's name first surface in this litigation? I believe the date, Your Honor, was in December, in early December. And if the court would permit me some time, my co-counsel will have the exact date. It was in early December. But wasn't it prejudicial to preclude the government from taking the expert witness deposition? No, Your Honor. Although it was admittedly a tardy disclosure, there was eight days in which the government still had. And as the court is familiar, trial counsel often has to operate under the pressures of trial practice. Eight days is sufficient, and often depositions are taken the day of trial. Now, clearly this would have been somewhat of a time crunch. But the government also here was able to prepare and have enough time to submit a written report in which its expert incorporated Dr. Jordan's findings. Therefore, there was no real surprise, no real harmful prejudice to the government in this case. And Rule 37C1 contemplates situations just like this. It contemplates people such as Ms. Harris, whose situations merit the exception for harmlessness. I'd like to defer now to my co-counsel, who will discuss the issue of the adoption of the factors test. All right. Thank you, counsel. Good morning, Your Honors. To make a brief correction, Dr. Jordan's name first came in sometime in October, the exact date, I'm not sure, where he was disclosed as just a normal witness and wasn't actually disclosed as an expert witness. Why was that? That, we cannot say specifically why he was listed as only a testifying witness, because he was not one of Ms. Harris's treating physicians. So we don't have a good answer why the trial counsel did that. Your Honors, I would like to talk about the factors test. In this circuit's case law, district courts do not have to consider any particular factors or weigh any considerations when making these 37C1 sanctions and excluding expert testimony. If this Court were to adopt a factors test, it would do two things. It would create uniformity and predictability in this Ninth Circuit case law. Isn't the rule clear enough? Well, Your Honor, it's true that the district court has discretion in managing its own docket. In fact, the government will come up and say that the district court has broad discretion with respect to managing its own docket and judicial efficiency. And the government will probably say that it's not the job of this Court to reach down and manage the district court's docket for it. While we agree the district court does have broad discretion with that regard, it's not unfettered discretion. The district court discretion necessarily has branches. Your Honor, Judge Warbaugh was referring to the – there are two factors within the rule itself. Yes. Substantial justification and harmlessness. Yes, Your Honor. What's wrong with – why do we need anything more? Yes, Your Honor. We think that harmlessness and substantial justification are alone not self-defining and that the district courts need more guidance with respect to that. Already the Third, Fourth, Fifth, and Tenth Circuits have recognized the need to have a factors test, and they've all adopted a factors test. This, in turn, will allow and create a record for meaningful review. It's not the job of this Court to simply rubber stamp the district court's opinion just in the name of discretion, but look at the district court's opinion, see if it, in fact, abused its discretion. And by having factors listed out that the district court should take into consideration, that will help this Court be able to do its job more efficiently. So the factors that were identified, at least in the Fourth Circuit's opinion, which of those factors do you think are not encompassed within the two factors that are already within the statute or within the rule? Yes, Your Honor. Specifically, we urge this Court to adopt the Fourth Circuit's test. And that's a five-factor test that notably includes something that includes the consideration of the importance of the evidence. Nowhere in this Ninth Circuit's case law has a court considered the importance of the evidence in determining whether that testimony should be excluded. And that will – we know that the interests of the Federal Rules of Civil Procedure, they are there to – in order to prevent surprise and to promote judicial efficiency. But a consideration of importance to the evidence will weigh the litigant's interest in having his or her claim fully and fairly litigated in court against the court's interest in having judicial economy. And in this case, when considering the importance of the expert, when considering that Mrs. Harris' sole expert on the issue of permanent disability, Dr. Jordan, was excluded and the government had their expert testify as a permanent disability, when considering that importance, this Court and the district court should have found that that was so important that it should not have been excluded at trial. The government's expert testified that she was temporarily disabled. Our expert was going to testify that she was permanently disabled, but was not given that opportunity. The district court then ultimately found that she was only temporarily disabled. I see that my time is running short, so I'd like to reserve the rest of the time for rebuttal. Thank you very much. May it please the Court. My name is Keith Staub, and I represent the United States. As the Court knows, the appeal is of a district court's decision following in the merits in which the plaintiff was represented by a trial attorney. It seems that based on the argument of the plaintiff's counsel in this case, they're conceding there was no substantial justification for delaying the expert disclosure until a week before trial. So I will speak primarily to the issue of harmlessness to the defense. In this case, as in the case of Yeti by Mali, in which this Court held and affirmed that the district court properly excluded an expert who was disclosed a month before trial, based on the fact that the defense did not have an adequate opportunity to depose that expert within a month. Why couldn't the judge just have continued the case for a week to have the deposition if the witness was so important? Well, firstly, Your Honor, the plaintiff's attorney did not request a trial continuance, and I believe that the district court was within its discretion not to offer a trial continuance. This Court typically defers to and respects the district court's management of its own trial calendar. In this case, the district court was ready and had set aside a week to try this case, and I think that the court properly exercised its discretion in not offering to continue the trial based on the fact that the disclosure was a week before trial. I had a question that may be more philosophical. The Federal rules begin with setting forth the policy in favor of just, speedy, and inexpensive determinations of every action as kind of the beginning point. Here you have a case that arguably was impacted because of the negligence or arguably the negligence of counsel, and yet the one that bears the burden of that mistake is the party. Is that, in your mind, carry forth the spirit of the rules in which it seeks a just determination of every action when a party is significantly impacted by what might be viewed as the negligence of counsel? How do you respond to that? Yes, Your Honor. I think that if we were to always permit late disclosures, such as in this case, a week before trial, based on the acts of the trial attorney, it would open up Pandora's Box because there would be little if no compliance with the discovery statutes. There would always be that out to argue that, well, it wasn't my fault. It was my attorney's fault, and I should be permitted to disclose late. I should be permitted to conduct further discovery or what have you. It would completely circumvent the intent of the discovery statute. Now, counsel also argued briefly that we were not harmed by the fact that there was a late disclosure because Dr. Cowell had an opportunity to review the opposing expert's report. My response to that is that, more importantly, I did not have an opportunity to depose that expert prior to trial. I think there is much more to preparing for trial than just having your expert review and comment upon that report. Why didn't you have time in the 8 days to depose the expert witness? It was 8 days before trial. Your Honor? What prevented you from deposing the witness? Firstly, the plaintiff's attorney never offered to produce his expert prior to trial, never contacted me to offer the deposition. Aren't you supposed to notice the deposition and request it, not wait for them to offer it? Well, yes, Your Honor. And unfortunately, I would not have had time, given the fact that during the week before trial, I was preparing my witnesses, I was preparing my cross-examination of the witnesses, I was preparing for opening and closing. I simply did not have time to set aside 2 days, which is probably what it would have taken to prepare for the deposition of that expert. Spend several hours deposing that expert would have taken away 2 days of my valuable trial preparation time, which would have, I think, severely impacted the defense's ability to try the case. When did you first realize that Dr. Jordan might be involved in this case? Well, Your Honor, it was in November that the plaintiff's attorney indicated he wanted to list Dr. Jordan as a witness. He did not indicate that he was an expert. Did he notify you by phone first or by letter or something? As I recall, he notified me in by telephone, verbally, that he was going to want to add him as a witness. But just as another doctor, he did not indicate he was an expert witness. But he was in a treating position, though, was he? So he would have been. I did not know that. I did not know what he was. The plaintiff's attorney listed a number of treating doctors in the witness list. I did not know. I assumed that all of them were treating doctors. And as is often the case, plaintiff's attorneys list a number of witnesses, a number of treating doctors in their witness list, and do not call most of those, if any. And so it is not my practice to depose each and every treating doctor that's listed in a plaintiff's witness list. So you had no reason to believe that this was an expert witness? I had no reason whatsoever to believe this was an expert witness. I had no expert report. I had no medical records. I did not know who Dr. Jordan was. I had no choice but to assume that he was nothing more than a treating doctor. And my practice in every situation is to depose an expert witness that is retained and designated and for whom a report is given. I did not have that opportunity here. Would you take a moment and address the factors test that the appellant wishes us to adopt? Yes, Your Honor. I think that the two exceptions that are discussed in Rule 37, substantial justification and harmlessness, encompass all of the factors that are critical for the district courts to address before ruling on imposing Rule 37 sanctions. The other courts, the other circuits that the plaintiff points out, all address the prejudice, the harm to the opposing party. They talk about the resolution, efficient resolution of cases. All of these are addressed by this circuit. This circuit has pointed out, as I indicated in the Wang case, that they defer to the district court's management of its case load and trial calendar. That points and addresses to the issue of efficient resolution of the cases. And, of course, the real critical issue, the ones that are discussed in the rule are substantial justification and harmlessness. And both of those were addressed by the district court in this case. And the district court did not abuse its discretion in ruling that there was no substantial justification and their defense was harmless. Is there anything surprising about the information contained in the expert's declaration? Or report, I'm sorry. Dr. Jordan's report was a very vague report. It really said very little about the disability or how long the disability would have lasted. It was basically one or two words. There was no way I could glean from the report itself what Dr. Jordan intended or what the basis of his opinions were. That was why it was critical for me to depose him, to find out the basis of his opinions, to find out what he meant by his report, because it was so vague. So I didn't, I couldn't say I was surprised by it, but I really couldn't tell what he intended by it either. Your Honors, I think that unless the Court has further questions, I would ---- Let me say, the counsel argued the one factor that may not be encompassed within the two in the rule would be the importance of the evidence. How does that fit with, from your perspective, within either substantial justification or harmlessness? Well, Your Honor, I think that the importance of the evidence in this case was addressed, is addressed by the fact that there were two other treating doctors who testified, two other doctors who testified about essentially the same issues that Dr. Jordan was going to render a trial, that being that the accident caused the injuries and that the disability resulted. Dr. Herrick at trial testified it was a permanent disability. That presumably, and I'm only assuming, that's what Dr. Jordan would have said. So there was no harm, and the evidence came in through the testimony of the treating doctors. So I don't think that the plaintiff was harmed by that.  Thank you. Thank you, counsel. I think it is important to note at the outset of our rebuttal that Dr. Herrick did not testify in his capacity as an expert, as Dr. Jordan would have and as Dr. Cowell was able to do. And that is really the crux of this. We believe that the plaintiff, Ms. Harris, was harmed by not having an expert to counter the government's expert testimony. Further, I would like to also address the government's argument that this case is similar to Yeti by Mollie and distinguish it. That case involved complex litigation. It was a month-long trial. But here we had only three days. Further, the government addresses the fact that trial counsel did not request or ask for a continuance of the trial. You know, there's an old saying that you can hire an expert to just about give any opinion you need. Why would an expert's opinion be any better than a treating physician's opinion in this case? The expert would be allowed to use magic words. In my expert testimony, his background would be able to come in, and he would be a specialist in the field. Well, you didn't have a jury here, right? It was just a court trial. Correct. Yeah. Correct. But we believe that that would have made You think that might have made a difference for the judge? Yes, especially because the government was able to have an expert, and not only an expert, but an expert that was able to incorporate our expert's report into his own and testify to that report. And we believe that that made the major difference. We did not have the benefit of our expert, but the government was able to use our expert against us. Okay. The rule does not look for the reason 37C1 is listed. It gives exceptions. It doesn't rely on the fact that trial counsel did not request an exception. It looks at particular harm in a particular case. The government here did not suffer an actual harm. I'm curious what you think the trial judge should have done. Morning of trial, come in, and you've got this issue. You've got a deposition has not been taken. You've got an expert that was not disclosed. What do you think the trial judge should have done? I think it would have been within the Court's discretion to allow a continuance, a short continuance. On the Court's own should have suggested, okay, we're going to continue this matter? If you're not ready to go, we're going to continue the matter? I think that that could have been done. Or the trial could have simply proceeded. There were eight days in which to conduct a deposition. And while the deposition may have been vague, it would have been no more vague than our deposition of Dr. Cowell. Okay. So I follow you there. Should there then be no consequence for this delay in disclosure? There should be consequences for delay in disclosure where that delay is not substantially justified and causes harm to the opposing party. We argue here that there was no real harm suffered by the government. Okay. All right. Thank you, counsel. Thank you. Yes. The case of Harris v. United States will be submitted. Thank you, counsel, for the argument. United States v. Osan has been submitted on the briefs. Steph v. Gonzales is submitted on the briefs and will take up.
judges: Wardlaw, Paez, Beistline